Beverage Commission. The first hearing of this case is scheduled for August 30th. Police school of appeals for the Fifth Circuit is now open according to law. God save the United States and his honorable court. All right. Good afternoon, counsel. We're here for one case today. It's the fog delayed argument in Gabriel Invst v. Texas Alcoholic Beverage Commission. We'll first hear from Mr. Post with those two beautiful flags behind you. Thank you, Your Honor, and may it please the court. The question presented by this case is narrow and sharply defined by the briefs. The TABC concedes that gig qualifies for the grandfather clause that's set forth in subsection F of section 22.16, and it also concedes that gig is exempt from the restrictions in subsection A. Further, the TABC concedes that nothing in the statute prohibits a non-exempt corporation from owning an exempt corporation. But despite those concessions, TABC contends that the restrictions in subsection A still apply to a public corporation that acquires gig, even though gig is exempt, with the effect of invalidating the permit that is held by gig. That argument is textually contrived, and it's logically impossible. It would nullify most of the provisions of subsection A with respect to an exempt corporation. I need not dwell long on subsection F, the grandfather provision, because it is undisputed that gig qualifies for all the criteria of the grandfather provision. Therefore, by the plain language of the statute, this section, meaning the entirety of section 2216, shall not apply to gig. That should be the end of the matter. But the district court believed that subsection A independently would apply to a permit held by gig. I'm sorry, was there a question? No, no, I don't. I was having a problem. Go ahead. But I do have a question, since you asked for it. Of course. There might be one. I'm a little confused about the scope of this dispute. And you even refer to this in your brief when I think you say, well, at a minimum, our declaratory judgment would just ask for a ruling that gig, even if it's acquired, can still hold the permit. And I guess I'm not sure if there's really a dispute about that. Number one, tell me if there is a dispute about that, and obviously the other side can tell me what its position is. But in this scenario where there's an acquisition, I mean, what do you want us to rule? I think you want something beyond just that gig could continue to hold the permit, but that a public corporation that bought it could actually, that would be a lawful arrangement and the liquor could be sold. That the permit would be unimpaired in that scenario. Right. And Your Honor, I gave some thought to that precise question in preparation for the argument. And I think in all candor that it is correct that the declarations that we have requested request a declaration that, as I've just said, the permit would be unimpaired by the acquisition of gig by a non-exempt corporation. And so to the extent we indicated in the briefing that it's sufficient simply to recognize that gig is exempt without considering the implications for a non-exempt corporation, that probably is a step too far given the scope of the declaration and really the essence of the party's dispute. So you do want us to decide whether, let's just make it a little more concrete, H-E-B buys this entity, this company that's been created in bankruptcy. The real dispute is whether with H-E-B owning the entity, the entity can continue selling liquor. That's exactly right, Your Honor. I mean, otherwise it's sort of academic, right? I mean... That's correct. That's exactly right. The question is whether the permit would remain valid and gig could continue operating under the permit if it was acquired by, in your example, H-E-B. And I would turn in the context of that clarification to the particular language of subsection A, which is where the district court grounded its decision. And I think where we see the essence of the dispute. And I provided the court with a short bench exhibit to illustrate the point that I want to make. That statute provides that the P permit may not be owned or held by three categories of business entities, a public corporation, an entity that is directly or indirectly owned or controlled by a public corporation, or an entity that would hold a permit for the benefit of a public corporation. Now as you can see in the bench exhibit, the district court recognized and the TABC acknowledges that the first clause does not apply to gig by virtue of the grandfather clause. But the district court held and TABC contends that the second two clauses nonetheless do apply to gig. If gig is an entity that is directly or indirectly owned by a public corporation or holds the permit for the benefit of a public corporation, the TABC contends that those prohibitions remain in force despite the fact that subsection F specifically says that all of section 22.16 shall not apply to gig. That is an irreconcilable conflict. Let me ask you about the second clause, Mr. Post, and I'm not sure what I'm going to ask is really what the court, the district court held, but it's maybe a variation of it. Because I understand how you're reading it. I understand your, so let's assume your version is plausible or reasonable. But my question is whether this reading is not also plausible. That F, the grandfather clause is really defining public corporation. And it's saying public corporation is not gig because you're a grandfather. But then you look at the second clause, and that's basically my HEB hypothetical. Any entity so that the permit may not be held by an entity, which would be you, you're holding the permit, which is directly held or directly owned in whole or in part by a public corporation. And then because HEB is not grandfathered, it would be impermissible. In other words, because if F is just defining public corporation, the public corporation is HEB and it's not grandfathered in that arrangement of it, of it owning you as the entity would be invalid. Tell me why that's an unreasonable construction of the statute. I think, Your Honor, there are two difficulties with that reading. The first is that subsection F itself unambiguously says this section shall not apply to a public corporation. So it doesn't say this section defines public corporation for purposes of the statute. It says a business that satisfies these criteria is exempt. The statute shall not apply. And so I think that the reading the court has suggested is not reconcilable with that language. Second, the reference to an entity in subsection A that would hold the permit either subject to ownership of another corporation or for the benefit of another corporation subsumes within it a corporation as one form of business entity that can fall within that class of entities. And so if your reading is taken as correct or if the district court's reading is taken as correct, GIG is deprived of the benefit of the grandfather clause with respect to either the second or the third scenarios in subsection A. Now, here's why I'd say that isn't true, because let's look at the second clause. GIG would benefit, let's say GIG wanted to buy SPEX, right? SPEX isn't a public corporation, I assume, because they have liquor all over their shelves. So on that reading I just gave, B would apply any entity, which would be SPEX, GIG could buy SPEX because the public corporation part would not apply to GIG. So you could actually, GIG could go buy up other companies that hold permits, whereas HEB couldn't. I mean, wouldn't that give force to that second clause still, give you the benefit of you can buy SPEX, whereas HEB can't buy SPEX? Your Honor, that would give GIG the benefit of being the superior entity in the context of subsection A, but subsection A is dealing with subordinate entities. That is, entities are subordinate to the ownership of another public corporation. And to the extent that GIG is the subordinate entity, that reading would nullify the grandfather clause. And the thrust of subsection A is to focus on the entity that holds or owns the permit in this context, and in terms of the question before the court, that is the subordinate entity that holds subject to the superior ownership of another public corporation. And in that context, the grandfather clause would be completely defeated. And it's not necessary to contort the statute to reach that sort of outcome, if that's what the legislature had intended. We know that the legislature knows how to deal with precisely this situation, because the legislature has included change of control clauses in other grandfather clauses in the Alcoholic Beverage Code. We point to section 11.50, where the legislature took just that step. And the legislature has included change of control clauses in its permit renewal statute. So if the legislature had wanted to deprive an entity like GIG of the ability to practice under the permit, if it was acquired by a public corporation, the straightforward way to do that, the way that it has done in other contexts, is simply to legislate a change of control clause. And that would have eliminated any question here, and the legislature did not do that. Mr. Coast, you led off in your opening by noting that the question presented is, as you put it, narrow and sharply defined. Yes. It's also a weighty one. I think we all recognize that. It's one with potentially monumental financial consequences. I just wonder, and I'm sure this question will not surprise you, why isn't this a perfect sort of exemplar? Why doesn't this check all the boxes for certification to the able members of the Supreme Court of Texas? Well, you're quite right, Your Honor. The question does not surprise me. It's one that we took seriously at the time that we filed the brief, and there really are two principal reasons we didn't believe the case was suitable for certification. The first is that you have a straightforward interpretation of a statute that we believe to be unambiguous, but independent of our position about the lack of ambiguity in the statute, it's a straightforward matter of statutory construction. This is not a problem of Texas common law, an interpretation of an insurance policy that's going to have broader consequences. You're dealing with canons of statutory construction that this court is equally capable of applying as the Texas Supreme Court. The second is that while I think the court is correct that the question has weighty significance to the parties to this case, it does not have significance to the broader Texas community because there are only two companies that qualify for this grandfather clause. Now, it is absolutely the case that with respect to my client, they invested capital in reliance on the plain language of the grandfather clause, and so their reliance interests are significant. But you have a situation where there are two corporations that qualify for this grandfather provision, and the statute separately states that no party may own more than 250 permits at any one time, and you can only have 15 permits per year issued. So it's not the case that ruling for gig in this appeal instantly results in public corporations owning package stores all over the state of Texas. And so we don't really think it's necessary or suitable for certification. The court does direct a number of important questions to the Supreme Court. Those of us who practice before the court bring our own questions to the Supreme Court, and we're mindful of the limited resources that court has to invest, and we don't really think this case requires it. Mr. President, let me follow up on one thing you said. Oh, Judge King, did you want to go ahead? Well, the thing that bothers me, too, about the certification process, particularly in this case, is this is a bankruptcy case, and, you know, we don't want anything that drags out a bankruptcy case. You got to be very sure that you need to do it, and that's concerning. I'm not sophisticated enough in bankruptcy to have thought of that answer myself, but I would join the court's concern. Next time you will. Yes. Mr. President, to follow up on one thing you said, you mentioned there were reliance interests on this grandfather clause back basically 25 years ago, I think, in the mid-'90s is when all this happened, if I'm correct. If the reading you're pushing for is, as you say, straightforward, plain, it just strikes me as very – I mean, you would have been sitting on a pot of gold for 25 years, because this thing has enormous value, we all know, if it works the way you say it does. Yet for 25 years, why didn't – and if there were these reliance interests and expectations, it just seems inconsistent with your position of this being plain and unambiguous, that for 25 years, no one realized the tens of millions of dollars, if not more, this thing would be worth on the market. Your Honor, I think that the answer to the court's question is that the current owners of Legacy Gig, those parties who own the equity in Legacy Gig, invested in this entity in reliance on the opportunity to use the grandfather clause. So Legacy Gig is owned one-third by the entity that owns this permit and the ability to practice under the permit. And then if the proceeds from a sale of Gig are profitable, they will work to the advantage of former shareholders and the other party who purchased in the bankruptcy. So I don't want to make it too complicated, except I'll tell the court that the principal answer to your question is the reliance interest arose in the bankruptcy clause. I understand what you're saying now. The people who come in – I mean, and they're doing it at a discounted value based on the expectation that you're going to win this litigation and all that. I get that. You were talking about the people back – because I thought these companies that were created in the 90s really right when the law was passed. Is that correct? I mean, they weren't – they haven't been around since 1940 or something like that. Well, that's true. These particular business entities came into existence at the time this law was passed. And I think it is fair to say in reliance on the protection that the law afforded. But we don't know from the record anything more regarding the specific motivation of that decision. Unless the court has any further questions, I'll yield my time until rebuttal. All right. You'll have five minutes for rebuttal, Mr. Post. And we'll now hear from Mr. Kraft. Thank you, Judge Costa, and may it please the court. Gig's argument in this case suffers primarily from two related problems. First, Gig is trying to use an exemption that applies only to itself to avoid a restriction on package store permits that is expressly triggered by the involvement of public corporations other than itself. And second, Gig's reading would require adding words to the statute so that the exemption attached to any permits that Gig holds and not just to Gig itself. The bankruptcy court and the district court properly refused Gig's request for a judicial rewrite of the statute. This court should do the same and affirm. Now I'll start with Mr. Post's bench exhibit because I think it captures, at least in part, the nub of the party's disagreement about the meaning of this statute. And that disagreement centers on the point in the statute where they have drawn this chart. And here's what I mean by that. In Gig's view, being directly or indirectly owned or controlled by a public corporation is an attribute of the permit holder. And so if the permit holder is like Gig and exempt, we don't care what its attributes are. The problem with that reading is that it is not reading subsection A as a whole as it is written. When we do that, we see that subsection A is concerned with attributes of a package store permit so that it is correct to say that being held by an entity that is directly or indirectly owned or controlled by a public corporation is an attribute of the package store permit. And because that attribute involves two corporations or two separate entities, if only one of them is exempt from this statute, we still have a public corporation with an interest in the permit that is prohibited by subsection A. So it is not accurate to say, as Gig does in this last column of its bench exhibit, that TABC's position is that subsection A applies to Gig anyway. TABC's position is that subsection A applies to a permit held by Gig when another non-exempt public corporation acquires an interest in that permit that is triggered by subsection A. We know from the rest of the statute that the legislature drew a specific distinction between permits that attach to a corporation, or I'm sorry, exhibit exemptions that attach to a corporation and exemptions that attach to a permit. You can see that by contrasting subsection F with subsection D. Subsection F is the exemption that Gig has, and it says it applies to a corporation. Just to the corporation, that's Gig. But if you look at subsection D, subsection D says that section 2216 shall not apply to a package store located in a hotel. Now, we know because each package store location must have its own permit, that that exemption in subsection D exempts a category of permits from this statute. It is a permit-specific exemption in contrast to the corporation-specific exemption that Gig has. The only, and that essentially is what Gig is trying to do in this case, is convert its corporation-specific exemption to a permit-specific one. But to do that, we would have to add words to the statute. The statute would have to say, subsection F would have to say, this section shall not apply to a permit held by a corporation that ticks all these boxes in F. But of course, we know that under principles of statutory construction, we cannot add those words to the statute. So, Counselor, the same question I asked Mr. Post. I'm trying to figure out what the disagreement is. Let's say H-E-B buys this entity that's been created in bankruptcy. What is the commission's, what enforcement action would you bring? Would you go after H-E-B? Would you revoke the permit? I'm trying to understand what the, it's hard because in the declaratory judgment posture, what would the enforcement action actually be? The enforcement action would be to challenge the permit. The permit would be rendered invalid because, contrary to what Mr. Post said, the subject of the restriction in A is a package store permit. It's not- Even Gig itself would no longer hold the permit. You would try to take back the permit, and if you succeeded, it would, even Gig would no longer have a permit. Gig would no longer have a valid permit because it would have been rendered invalid by H-E-B's ownership of Gig in your hypothetical. But, and that goes to what Mr. Post said in his opening argument that the subject of the restriction in subsection A, in Gig's view, is the permit holder and not the permit. That's also something they said on page five of their reply brief. That's wrong mainly for two reasons. First of all, it's just grammatically incorrect. The subject of the sentence in subsection A is a package store permit. But we also know that Gig is incorrect in saying that the focus of subsection A is just the permit holder. And we know that by going down and looking at subsection E of this statute. Subsection E is what I'll call the lawsuit provision. That subsection allows a package store permittee to bring a lawsuit for injunctive relief and by a violation of subsection A. And what's crucial for our purposes today is who that statute says can run afoul of the prohibition in subsection A. And if you'll bear with me, I'll just read the first part of it. It says any package store permittee who is injured in his business or property by another package store permittee or by any other person by reason of anything prohibited in this section may sue. So we know from that language that a person who is not the permit holder may independently trigger that prohibition in subsection A. And that would be the case if a non-exempt public corporation who is not the permit holder acquired an interest in a permit that is prohibited by subsection A. Counselor, is that in your brief? It may just be me that I didn't pick up on it, but I wasn't. No, Judge Costa, we did not address subsection E in our brief. I'm raising it in response to the statement on page five of the reply brief that the focus of subsection A is just the permit holder and not the permit. And I believe Mr. Post made the same comment in his opening argument. So we know there's also case law saying the rules of preservation aren't necessarily that strong when it comes to interpreting a statute because the statute means what it means. The lawyer's arguments can't change it. But anyway, I just wanted to make sure I hadn't missed that in the brief. That's correct, Judge Costa. It's just one additional point to show that an entity other than the permit holder is the target or can trigger the prohibition in subsection A, which is directed at the permit. Now, in his opening argument, Mr. Post also mentioned these change of ownership provisions in other statutes in the code. And those conditions would trigger a withdrawal of permit privileges if there was a change in ownership under section 1150 or 2804 of the code. I can't really improve on the argument that we made in our brief, which is just that that doesn't prove anything because under those sections, if the permittee changed owners to a private corporation or to individuals, it would have the same change of ownership effect as selling to a public corporation. It would trigger those statutes and they would withdraw the permit privileges. But this statute would not at all be concerned with the sale of an ownership interest to a private corporation or to individuals. It's not concerned about change of ownership. It's concerned about interest by public corporations in a permit. That restriction already exists in subsection A, so we don't need a change of ownership provision like we have in these other statutes. Now, also in its brief, Giggs states that TABC is trying to read this statute to say that it prohibits any direct or indirect interest by a public corporation, much like the statute that's the subject of the Kadena case that the parties discussed in their brief. And they point out that this statute isn't as broad as that because it doesn't actually use the word direct or indirect interest. But it doesn't have to. I'll concede that this statute may not be as broad as a statute that prohibits any direct or indirect interest in another business or a permit. But that doesn't matter for this case because even though this statute enumerates the particular interest in a permit or the particular relationships between a public corporation and a permit that are prohibited, one of them is exactly the relationship that Giggs asked for a declaration about, which is, if they sold their stock to a public corporation, then that public corporation, which is not exempt, would trigger that prohibition in subsection A because that is the kind of interest that is prohibited. I want to briefly address the point that Mr. Post made about the consequences of their interpretation. And he pointed out repeatedly that there are only two corporations that qualify for this exemption. That's true. But as Mr. Post said, any individual permit holder can have up to two exemptions. That's up to 250 package store permits. And while there is a limit of acquiring 15 original permits in one year, that limit does not apply to the acquisition of existing package stores. So to take Judge Costa's example and broaden it a little bit, if Walmart, for example, bought all of Giggs' stock and then Giggs acquired specs, that would not be limited by the code because it would be an acquisition of existing package stores. So Giggs could acquire all of specs package stores within one calendar year, and it would only be subject to that 250 limit. And that 250 limit is significant because there are only around 2,500 package stores in Texas. So one permit holder can potentially have 10% of the package store business in Texas. So there are significant consequences to the sale of liquor in Texas if Giggs is correct. So given the state's view that the stakes are high here, what about Judge Willett's question about certifying to his former court? Yes, Judge Costa. It's certainly a fair question that Judge Willett asks, and it may be one of the few areas in this case where there is common ground between the parties because we took the same that the language of this statute is clear and it's straightforward and it's an exercise in statutory interpretation. So certification is not something that is necessary in this particular case. So the other consequence of this that I do want to point out, and I think what Mr. Post is seizing upon is that somehow this vitiates the exemption if Giggs is exempt but it can't hold a permit in these other scenarios that are described in subsection A. It's not an odd outcome for a couple of reasons. One is, as Judge Costa pointed out, Giggs would still be allowed to be the public corporation in those two scenarios and acquire a non-public corporation that would hold package store permits. So that exemption would still have meaning even in those other two scenarios. But it's also not an odd result because of the language of the statute as a whole. It prohibits an interest in package store permits that implicate two different entities. So if we have an entity that is outside the umbrella of this exemption and comes in and that Giggs corporation specific exemption would shield that interest from application of the statute. And it's also not odd when you contrast it with Giggs reading. If Giggs is right, it means that this limited exemption, which required not only that the public corporation be a permit holder or applicant by a deadline that expired four months before the statute even went into effect, but also required the holder to affirmatively claim the exemption by filing with TABC by the end of 1995, just four months after the statute went into effect. That window has long ago closed, but under Giggs reading, it would mean that a public corporation that long ago failed to qualify for this exemption could nonetheless be a public corporation that directly or indirectly owns or controls the holder of a package store permit. And that is exactly what subsection A says cannot happen. So that would be the odd result if Giggs reading were to prevail. Before my time expires, I did also want to briefly address Giggs request for alternative relief at the end of its reply brief. It argues there that a non-exempt public corporation's acquisition of a minority interest in Giggs would not trigger the restrictions in subsection A. And indeed, it even suggests on page 15 that Giggs could sell minority interest in itself to any number of non-public or non-exempt public corporations so long as one of them didn't have a controlling interest. But nowhere in that discussion of that requested alternative relief will you see any discussion of the language in subsection A that forecloses this request. Again, subsection A says a permit may not be held by an entity that is directly or indirectly owned or controlled in whole or in part by a public corporation. And that in part language means that even a minority interest that was purchased by a non-exempt public corporation in Giggs would trigger subsection A and invalidate the permit. If there are no further questions, we would ask the court to affirm and I'm happy to yield the rest of my time back to the court. All right. Thank you, counsel. We have your argument and Mr. Post will get the last word. You have five minutes. Thank you, Your Honor. I'd like to make four points in rebuttal. First is that I don't believe that TABC has satisfactorily answered the challenge of demonstrating that its reading of this statute would not nullify the grandfather clause with respect to Giggs as the owner or holder of the permit, the precise issue addressed by the statute. On the contrary, I think the most significant exchange in this entire argument for both sides was the exchange between counsel and Judge Costa, where counsel acknowledged that in this scenario, the permit would be rendered invalid. They conceived that the grandfather clause would be nullified as to Giggs and in fact celebrate. And I suggest that there is no Texas decision of which I am aware that adopts that kind of interpretation of a statute. It would defeat the very purpose of the grandfather clause. Second point, counsel addressed only very briefly the obvious alternative to accomplish TABC's objective, which would have been to embed a change of ownership provision in the grandfather clause. The only argument he made was that there was no need for that because there could be a private owner. But subsection F doesn't deal with private ownership. A change of control provision embedded in subsection F that simply said the exemption to a public corporation that arises if the criteria are satisfied will cease to exist in the event of a change of ownership to another public corporation would be self-contained within the public corporation provisions. So TABC's answer is no answer at all. There was an obvious way the legislature to accomplish this result. They didn't take it. Third, Judge Costa, I think I gave an incomplete answer to the question you posed to me in my opening argument about whether this language could best be understood as a definition of public corporation. In addition to the explanation that I gave, I would point out that if that had been the legislature's purpose, it would have done so with reference to subsection B, which provides a definition of public corporation. And so if the legislature had intended only to alter the definition of public corporation in subsection B, it would have phrased subsection F to say the definition of public corporation in subsection B shall not apply to a corporation. It didn't say that. It said this section shall not apply. And the final point that I would address is counsel's argument regarding the consequences. We have an agreement that at most GIG would be able to operate 250 permits under this scenario. That is not a catastrophic scenario for TABC's regulation of the Texas industry. And it is a validation of the economic reliance interest both of the individual owners of GIG who had the foresight to take advantage of an opportunity that the Texas legislature created and the current equity owners who invested in reliance on that expectation. And my final point with respect to consequences is to emphasize that when you consider the purpose of this statute, it is essential that you consider the statute as a whole. Exceptions are part of the statutory purpose. As the Texas Supreme Court says, legislative compromise is the very essence of legislative choice. And so the decision to grant the exemption in the grandfather clause is every bit as much part of the public policy of the state of Texas as the general prohibition in this statute. We ask that the court honor and enforce that exemption in accordance with its plain language. Mr. Posta, I know you're not the bankruptcy lawyer unless you've gone into other practice areas recently, but you may be able to answer this question. Um, in the bankruptcy has the risk. I think some of there was a Gabriel entity that was restructured. Is that just an ongoing entity now? And then my understanding is this entity that has these new investors you're talking about was spun off and it's really its whole the whole future. This one entity is based on this lawsuit. But I guess am I correct? Am I correct that the restructured entity that that's going forward and that that's not dependent on this appeal? That's correct. The debtors were consolidated into two distinct entities. There is a reorganized operating entity that is now operating all the stores and permits, except for one store and the permit that is owned by Legacygate, the separate entity. The plan has been confirmed. The plan has been consummated with the exception of a creditor's trust that will receive a the sale of Legacygate at the conclusion of the litigation. And so at the conclusion of this proceeding, to the extent gig has the value that we believe it has, it will be sold in the marketplace. And then those proceeds are divided among the equity owners and the unsecured creditors who stand to benefit as a consequence of the plan. But the restructured entity that's been confirmed. That's going forward with just this issue of whether it's going to make some money off this. All right. Thank you to both sides. Helpful arguments on the case will be submitted. And that concludes this sitting of the court. The court is now in recess.